Almira A. Wick v. Commissioner.
Wick v. Commissioner
Docket No. 109506.
United States Tax Court
1943 Tax Ct. Memo LEXIS 507; 1 T.C.M. (CCH) 434; T.C.M. (RIA) 43027; January 15, 1943
*507 James E. Bennett, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency in income tax determined by the Commissioner for the calendar year 1939 in the amount of $4,692.62. The principal issue is whether certain distributions made to petitioner in 1939 by the executors of the estate of her deceased mother are includible in her taxable income. If we decide that they are, the question whether respondent erred in determining that the sum of $7,996.80 constituted a part of such distributions taxable to her is also presented. Most of the facts are stipulated. We adopt and incorporate herein by reference the stipulation filed by the parties, and include the material parts thereof in our findings of fact made from other evidence. Findings of Fact The petitioner is an individual residing in Trumbull County, Ohio. She filed her income tax return for 1939 with the collector for the eighteenth district of Ohio. Almira H. Arms, the mother of the petitioner, died testate on April 14, 1934. Her will provided for certain specific and pecuniary devises and bequests, and bequeathed the *508 sum of $200,000 in cash, securities or other tangible or intangible property to the petitioner as trustee. Item VIII, defining the terms of the trust, provides in part as follows: Item VIII. I direct that my said Trustee shall treat the trust estate herein devised and bequeathed as composed of four (4) equal shares and one such share shall be held for the benefit of each of my four grandchildren hereinafter named, to-wit: - Paul Myron Wick, William Arms Wick, Peter Arms Wick and Laura Bonnell Wick. The will further directs that income and such part of the principal of the trust fund as the trustee may deem advisable are to be used for the education and support of the named beneficiaries, until they severally arrive at the age of 25 years, at which time the share of each is to be transferred to him in fee simple. Provision is made for gifts over of any or all of the shares, or for termination of the trust, upon the happening of certain contingencies. By a codicil the amount of each of the shares of the trust was reduced to $10,000. Item IX provides: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, of which I may die seized or possessed *509 or to which I may be entitled at the time of my decease, I give, devise and bequeath to my daughter, Almira Arms Wick, absolutely and in fee simple. Item XI provides: * * * * *
I direct that my said executors shall have the largest possible power and discretion in the settlement of my estate, * * *. I further authorize them * * * and generally to possess and exercise as full power and authority in the settlement of my estate as I could do, if living. No provision was made with regard to the distribution of current income to the residuary legatee. The petitioner and her husband, Paul Wick, were named executors. They qualified and were appointed in May 1934, and continued to act in that capacity until completion of the administration of the estate on December 30, 1939. At approximately annual intervals, the executors filed accounts with the Probate Court of Mahoning County, Ohio, showing their receipts and disbursements. All receipts and all disbursements were lumped without regard to their character as corpus or income. The executors maintained only one bank account in which all cash receipts, whether comprising income or representing the proceeds of sales of principal assets, *510 were commingled and deposited. There was no segregation of funds, so that once deposited, they lost their identity as corpus or income. During 1938 and 1939 distributions in cash were made to the petitioner, individually, without regard to the source of the funds distributed. In the former year they totaled $15,250. In round figures, cash receipts and disbursements of the estate during that year, exclusive of distributions to petitioner, were as follows: Receipts
$ 64,000
sales of capital assets
47,500
rents, interest & dividends
$111,500
Disbursements
$36,000
purchase of capital assets
6,500
Federal estate tax
13,500
other
$56,000 Net income amounted to not less than $34,000. In 1939 net income amounted to $23,242.86, and cash distributions to the petitioner aggregated $15,544.14, a total of $9,000 being paid to petitioner at various times, from February 1939 to November 1939, and $6,544.14 being paid to her on December 30, 1939, when final distribution was made by the executors. Each of the payments aggregating $9,000 was on the final account of the executors, filed January 1, 1940, and approved February 23, 1940, labelled "A/c distribution." The trust for *511 the benefit of the decedent's grandchildren was created at the time final distribution was made. Trust corpus consisted of 6,664 shares of stock of General Fireproofing Co., of the aggregate value of $39,984, which were then delivered by the executors to petitioner as trustee. During 1939 the executors received $7,996.80 dividends upon the 6,664 shares of stock. All other assets, consisting of securities and cash, were transferred to petitioner individually. The will specified no particular time for the creation of the trust for the benefit of the grandchildren, and the executors had felt under no duty to attend to the matter prior to final settlement of the estate. They were then advised by counsel, however, that the beneficiaries were entitled to some interest or income for the period of administration, notwithstanding the fact that the trust had not actually been created. As a fair settlement of such right, they decided to pay to the trustee the sum of $7,996.80, dividends received by the estate in 1939 on the 6,664 shares of General Fireproofing Co. stock. Their cash balance of $6,544.14 being insufficient for that purpose, it was included in the transfer of the residuary assets *512 to the petitioner individually, who thereupon issued her personal check for $7,996.80 to herself as trustee. The amount of the payment was entered on the books of the trust and was administered by petitioner as trust income. On the estate tax return filed by the executors, the value of the decedent's gross estate was reported as $393,454.36, and was increased by respondent to $411,760.86. In the executor's fifth account filed May 3, 1939, and approved by the Probate Court June 30, 1939, they listed the value of all estate assets, securities, funds and investments then in their hands as $464,399.70. Substantially all of those assets were included in the final distribution to petitioner individually except the 6,664 shares of General Fireproofing Co. transferred to her as trustee. The fiduciary income tax return filed by the executors for 1939 reported gross income of $27,557.28 against which deduction aggregating $4,689.42 were claimed, leaving a balance of $22,867.86. The sum of $7,996.80 was claimed as a distribution to the trust, and net taxable income was accordingly reported as $14,871.06. Respondent disallowed an expense deduction of $375 for management and accounting fees, *513 and denied the claimed distribution to the trust. The adjusted balance of $23,242.86 respondent determined to have been distributed to petitioner, leaving the estate with no net taxable income. A corresponding adjustment added $23,242.86 to petitioner's reported individual net income, as income received from fiduciaries, and resulted in the determination of the deficiency here in issue. Opinion The principal question here presented is whether the petitioner, who was residuary legatee under a will, is taxable upon income received by the testatrix's estate, and paid to her. A part of the amounts involved was received by the petitioner as a part of a final distribution by the executors, of both income and corpus; the remainder was received prior to the final distribution. We consider it clear from the decisions that where, as here, the will made no provision and local law made no provision, that the income of the estate be currently distributed to legatees, the amount received by a legatee, the petitioner, as a part of the final distribution by the executors was legacy, not income taxable to the petitioner under section 22(b)(3), Revenue Act of 1938; and we hold that the distribution *514 of $6,544.14 and securities received on December 30, 1939, by the petitioner from the executors, was a nontaxable legacy. S. F. Durkheimer, 41 B.T.A. 585; Estate of Anderson v. Commissioner, 126 Fed. (2d) 46; Frazer v. Driscoll, 46 Fed. Supp. 838; Estate of Ida A. White, 41 B.T.A. 525; Mabel I. Wilcox, 43 B.T.A. 931 (950 - 951); County National Bank & Trust Co. v. Helvering, 122 Fed. (2d) 29. This conclusion renders it unnecessary to consider the petitioner's alternative contention that she was only a conduit to pass to herself as trustee $7,996.80 dividends received during the year, and paid to her, and by her, to herself as trustee, upon the final distribution on December 30, 1939. A more serious question arises, however, with reference to the $9,000 received prior to final distribution of the estate. The petitioner, in effect, argues that though the payments totaling $9,000, were made throughout the year prior to final distribution of the estate, they were each denominated on the executors' *515 final account as "A/c distribution," that the payments were not payments of income made "as such," but as legacy, that the payments could not be identified as income because they were from a bank account of commingled income and corpus, and that for these reasons all was legacy. Most of the cases above cited are relied on as authority. Examination of these authorities disclose that distribution held to be legacy was received after or as a part of the final distribution, in the Durkheimer, Anderson, Frazer, and Wilcox cases. In the Ida A. White case, it is held that the will provided for payment of income, and that the amounts, though paid prior to final distribution, were from income and paid as such, therefore deductible from gross income of the executors. In County National Bank & Trust Co. v. Helvering, supra, we find a situation similar to that here being considered. There, as here, the will made no provision for paying estate income to the sole legatee during administration, and it was not contended that the law made such requirement. Only estate income paid to a legatee prior to final distribution was found taxable to the legatee. *516 In the instant case the fact that the executors' final report described the $9,000 paid as "A/c distribution" is of little assistance, for no evidence indicates how the executors' books of account or vouchers or checks issued, described the payments; the word "distribution" may have referred to distribution of income as such, rather than distribution of legacy, and the later notations on the final account are self-serving in nature. The amounts involved were within the income of the estate for the taxable year, and are not identified as being from corpus, (and not income, as determined by the respondent), or from income of any other year. Distributions of the same nature, in the amount of $15,250 had been made to the petitioner in 1938. The executors were by the testator specifically given "the largest possible power and discretion in the settlement of my estate" and were "generally to possess and exercise as full power and authority in the settlement of my estate as I could do, if living." Though not required to pay estate income to legatees during administration, they could in their discretion do so. Therefore, in our opinion, the amounts paid to petitioner prior to final distribution, *517 are plainly within the intendment of section 162(c), Revenue Act of 1938. [1]
The executors could deduct proper income payments or credits to a legatee, and the legatee was required to report as taxable income, the estate income so paid or credited. The matter was so treated by the respondent, the executors on their fiduciary return being given appropriate deductions. *518 We think the amounts were of income "properly paid" within the statute. We hold the petitioner to be taxable upon the $9,000 received prior to final distribution of the estate. The respondent, after allowing certain deductions not in issue here, included in petitioner's income the entire net income of the taxable year, amounting to $23,242.86 - giving like deduction on income report of the fiduciary. This amount included $375 claimed as deduction as an item of expense for management and accounting fees. The deduction of the $375 was disallowed, leaving $23,242.86 determined as distributed to, and taxable to, the petitioner. Inasmuch as the petitioner has stipulated that the disallowance of the $375 item was proper and has not sought to apply the retroactive provisions of section 121(a), Revenue Act of 1942, we conclude and hold that the disallowance was proper, and that the net income of the estate was $23,242.86. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. NET INCOME The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * * * *
(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.↩